IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | 5-95-CR-099(1)-DAE |
| | § | |
| | § | |
| EDWARD "JACK" CLUCK | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| AND | § | |
| | § | |
| KRISTINE ARLITT | § | |
| | § | |
| *Third Party-In-Interest* | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Senior United States District Judge David A. Ezra:**

This Report and Recommendation concerns several filings related to the Government's

efforts to collect on order of restitution. Specifically, at issue are the following: the Petition to

Foreclose Lien filed by Plaintiff United States of America, Dkt. No. 403; the Motion to Dismiss

the Petition Under Fed. R. Civ. P. 12(b)(6) filed by Third Party-in-Interest Kristine Arlitt, Dkt.

No. 405; the Motion to Dismiss Counterclaim filed by Counter-Defendant United States of

America, Dkt. No. 408; and the Motion to Strike Kristine Arlitt's Original Answer filed by the

United States of America, Dkt. No. 416. These matters were referred to the undersigned pursuant

to Rules CV-72 and 1 of Appendix C of the Local Rules of the United States District Court for

the Western District of Texas. The Court has jurisdiction pursuant to 18 U.S.C. § 3231,[1] and the undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). This matter is suitable for disposition without a hearing. *See* Local Rule CV-7(h).

For the reasons discussed below, it is recommended that the District Court **DENY** Arlitt's Motion to Dismiss, Dkt. No. 405. It is further recommended that the District Court **GRANT** the Government's Motion to Dismiss Arlitt's Counterclaim, Dkt. No. 408. It is finally recommended that the District Court **DENY** the Government's Motion to Strike Arlitt's Original Answer, Dkt. No. 416.

## I.      Factual and Procedural Background

On January 16, 1997, a jury found Defendant Elwood Cluck guilty on seven counts in connection with charges of bankruptcy fraud. *See* Dkt. No. 218. Cluck received a 24-month prison sentence. *Id*. He was also ordered to pay $185,000 in restitution. *Id.* The trial court entered judgment against Cluck on May 28, 1997. *Id.* Upon entry of judgment, the Government asserts, a lien pursuant to 18 U.S.C. § 3613(c) arose against all of Cluck's property rights. Pet. ¶ 6. The Government alleges it perfected the lien by recording notice of it in the Official Records of Bexar County, Texas on August 8, 1997. *Id.* ¶ 8.

Cluck unsuccessfully sought to vacate his conviction and restitution obligation on several occasions. *See, e.g.,* Dkt. Nos. 381, 383 & 386. Although the Government has not provided the Court with Cluck's release date, all parties appear to concede that Cluck was released from prison on May 28, 1997. *See* Dkt. No. 405 at 4; Dkt. No. 407 at 2.

---

[1] Section 3231 provides the Court with original jurisdiction to address "all offenses against the laws of the United States." 18 U.S.C. § 3231. "[A] sentencing court has jurisdiction to enforce its restitution order in the criminal case." *United States v. Yielding*, 657 F.3d 722, 726 (8th Cir. 2011); *see also United States v. Furkin*, 165 F.3d 33, 1998 WL 846873, at *4 (7th Cir. Nov. 24, 1998) ("A sentencing court retains jurisdiction to enforce the payment of criminal monetary penalties it imposes.").

Prior to Cluck's conviction, Third Party-in-Interest Kristine Arlitt filed for divorce from Cluck. On May 2, 1996, the Bexar County District Court entered a Decree of Divorce, dissolving the marriage between Cluck and Arlitt. Pet. ¶ 10 & Ex. A. The court, however, declined to divide the marital estate at that time because Cluck was a debtor in a bankruptcy proceeding, and the court determined that the bankruptcy stay had been lifted as to the divorce only. *Id.*

On May 11, 1999—almost two years after the trial court entered judgment against Cluck—the Bexar County District Court divided Cluck and Arlitt's marital property. Pet. ¶ 11 & Ex. B. The Final Divorce Decree awarded Arlitt various property including the following items in her sole personal possession: furniture, fixtures, goods, clothing, jewelry, personal effects, cash, as well as life insurance policies, certain tax refunds, and a 1992 Chrysler Lebaron. *Id.* The Final Divorce Decree, however, was the subject of a subsequent appeal that resulted in reversal and remand. Pursuant to the remand, on June 6, 2003, the Bexar County District Court entered a Revised Final Decree of Divorce (After Appeal), which awarded Arlitt, in addition to the aforementioned property, a one-half interest in unimproved land in Liberty County, Texas, as well as a .0975% interest in oil, gas, and minerals below 351 acres in McMullen County, Texas. Pet. ¶ 12 & Ex. C.

The Government asserts, and Arlitt does not dispute, that Cluck died in April 2017. *See* Dkt. No. 405 at 4.

On January 30, 2018, over 20 years after the trial court sentenced Cluck, the Government filed the instant Petition to Foreclose Lien, naming Arlitt as a Third Party-in-Interest. *See* Pet. The Government seeks to foreclose on the aforementioned Liberty County real property as well as on the McMullen County mineral interests. The Government also seeks to foreclose on the following items of personal property: a credenza, a blue leather chair, a safe, and a desk.

According to the Government, Arlitt testified while serving as defense counsel in *United States v. Andrew Maxwell Parker*, No. 5-08-cr-292-FB-1 (W.D. Tex. filed Apr. 30, 2008), and stated in that testimony that these personal effects, which the Government discovered when conducting an inspection of a storage unit thought to be Parker's, were given to her in her divorce. *Id.* ¶¶ 13-15 & Ex. D. As of January 23, 2018, the Government has collected only $9,782.22 of the $185,000 Cluck owed in restitution. Pet. ¶ 7.

On March 20, 2018, the Government filed a Motion for Entry of Default against Arlitt. Dkt. No. 404. The motion, however, was subsequently mooted by the Government's Notice of Withdrawal, Dkt. No. 411. Arlitt thereafter moved to dismiss the Petition under Rule 12(b)(6), Dkt. No. 405, and counterclaimed "for any amounts of monies/property collected by the government that she [Arlitt] has an ownership interest therein by law," *id.* at 19-21. The Government then moved to dismiss Arlitt's Counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. No. 408.

On June 3, 2018, Arlitt filed a Motion for Leave to File an Original Answer with Reaffirmation of Previously Filed Affirmative Defenses and Counterclaim One (1) Day Late. Dkt. No. 413. While the Government did not file a response in opposition to Arlitt's motion, it moved to Strike Arlitt's Original Answer pursuant to Federal Rule of Civil Procedure 12(f). Dkt. No. 416. Contemporaneous with this recommendation, the undersigned will grant Arlitt leave to file her Answer, subject to the Government's Motion to Dismiss and Motion to Strike.[2]

---

[2] Arlitt's Original Answer "reaffirms" her affirmative defenses and counterclaim as set forth in her previously filed Motion to Dismiss. According to Arlitt, her Original Answer simply corrects certain typographical errors in her prior pleading. *See* Dkt. No. 414 at 7.

## II.     Analysis

The Mandatory Victims Restitution Act ("MVRA") provides that "[a]n order of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title [18 U.S.C. § 3613]; or . . . by all other available and reasonable means." 18 U.S.C. § 3664(m)(1)(A). Here, the Government chooses to enforce Cluck's restitution obligation pursuant to 18 U.S.C. § 3613 and in a manner consistent with enforcing a judgment imposing a fine. *See United States v. Pickett*, 505 Fed. App'x 838, 841 (11th Cir. 2013) ("The United States can enforce a restitution judgment 'in the manner provided for the collection and payment of fines' in 18 U.S.C. § 3613.") (quoting *United States v. Fuentes*, 107 F.3d 1515, 1533 n.33 (11th Cir. 1997)).

Section 3613 permits the Government to "enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). Pursuant to § 3613, the entry of judgment caused a lien in favor of the United States to attach "on all property and rights to property of [Cluck] as if the liability of [Cluck] were a liability for a tax assessed under the Internal Revenue Code of 1986." *Id.*(c); *see also United States v. Mills*, 991 F.2d 609, 612 (9th Cir. 1993) ("Under the enforcement provisions of the [Victim Witness Protection Act of 1982] VWPA, the government acquires a lien against seized property when a district court issues a valid restitution order.").

*Arlitt's Motion to Dismiss.* Arlitt seeks dismissal of the Government's Petition under Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) the statute of limitations expired before the Government filed its Petition; (2) the assets sought by the Government are Arlitt's separate property; (3) Arlitt was not properly served; (4) the Government violated Arlitt's Fifth, Sixth, Eight, and Fourteenth Amendment rights by naming Arlitt as a defendant in

its Motion for Entry of Default and attempting to secure separate property without a judgment; (5) the Government violated Arlitt's Fourth Amendment rights by inspecting her storage unit in the *Parker* case without her consent; and (6) the personal property on which the Government seeks to foreclose is exempt pursuant to 18 U.S.C. § 3613 and 26 U.S.C. § 6334. *See* Dkt. No. 405.

A.    The Court Will Apply the Civil Rules. All parties here invoke the Federal Rules of Civil Procedure, even though the Government filed its Petition in Cluck's criminal case.[3] This does not appear inappropriate, notwithstanding the parties' omission from their briefing of any citation to authority supporting the application of the Federal Rules of Civil Procedure in these circumstances. *See* 18 U.S.C. § 3613(a) & (c); *United States v. Davis*, 681 Fed. App'x 338, 340 (5th Cir. Mar. 9, 2017) (applying the Federal Rules of Civil Procedure to tax lien foreclosure action brought by the Government); *United States v. Stallons*, No. 3:16-CV-2730-L (BK), 2018 WL 3640201, at *1 (N.D. Tex. Apr. 23, 2018), *report and recommendation adopted*, 2018 WL 3631821 (N.D. Tex. Jul. 31, 2018) (applying the Federal Rules of Civil Procedure to Government's civil action to foreclose on real property pursuant to its restitution lien).

B.    A Note on the Scope of the Record. A court's review of a motion to dismiss is "limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). A court may also take judicial notice of matters of public record. *See Norris v. Hearst Trust*, 500 F.3d 454, 461 n. 9 (5th Cir. 2007).

---

[3] *See United States v. Mays*, 430 F.3d 963, 967 (9th Cir. 2005) (explaining that Congress "enacted the current version of the MVRA against the backdrop of an unbroken line of judicial authority interpreting materially indistinguishable statutes authorizing the United States to enforce judgments of restitution in criminal cases without initiating separate civil actions").

Here, Arlitt has attached various documents to her motion to dismiss including two of the divorce decrees entered by the Bexar County District Court, Exs. 1 & 2 to Mot., correspondence between her and the Government related to the instant case and the *Parker* case, Exs. 3-5, 7-8 to Mot., and an ex parte restraining order entered by Judge Biery in the *Parker* case, Ex. 6 to Mot. The divorce decrees are attached to the Petition and constitute public records. Accordingly, the undersigned will consider them when evaluating the merits of Arlitt's motion. Further, although the undersigned does not believe that the restraining order entered in the *Parker* case has any bearing on the instant proceeding, the order may also be considered as a matter of public record. Matters like the correspondence attached to Arlitt's motion, however, generally should not be considered in evaluating the merits of a motion to dismiss, and the correspondence will not be considered here. *See Dorsey v. Portfolio Equities, Inc*., 540 F.3d 333, 341 (5th Cir. 2008) (refusing to consider additional evidence or pleadings in evaluating plaintiff's challenge to the district court's 12(b)(6) dismissal because "our review is limited to the complaint and proper attachments"). As evident from the discussion below, even were the Court to consider the correspondence it would not alter the undersigned's conclusions in this order.

C.    Arlitt's Motion Should Be Denied.

1.    **Statute of Limitations.** Arlitt's first argument for dismissal invokes the statute of limitations. According to Arlitt, the limitations period for an action in foreclosure of a restitution lien expired on May 28, 2017—20 years after judgment issued and long before the Government filed its Petition to Foreclose. This argument rests on Arlitt's view that the version of 18 U.S.C. § 3613 in effect at the time of Cluck's sentencing applies to the foreclosure.[4] In

_____

[4] Even if Arlitt were correct in applying the version of 18 U.S.C. § 3613 in effect at the time of Cluck's sentencing, the statute of limitations would have expired upon Cluck's April 2017 death. *See United States v. Mann*, No. A-92-cr-129 (1)-SS (W.D. Tex. Dec. 22, 2016), Dkt. No. 529 at

contrast, under the current version of § 3613 invoked by the Government, the limitations period will not expire until at least May 28, 2019—20 years after the date everyone agrees Cluck was released from prison. Arlitt argues, with scant supporting authority, that applying anything but the version of § 3613 in effect at Cluck's sentencing would require an impermissible retroactive application of the current version of § 3613. Arlitt's argument is unpersuasive, for the reasons discussed next.

A typical retroactivity analysis, which no party meaningfully invokes here, does not assist Arlitt's limitations argument. That analysis involves looking, first, to see "whether Congress has expressly prescribed the statute's proper reach." *Landgraf v. UIS Film Prods.*, 511 U.S. 244, 380 (1994). Where Congress has so spoken, a court must follow Congress's command. *Id.* at 379. "When, however, the statute contains no such express command, [a] court must [then] determine whether the new statute would have retroactive effect, *i.e.,* whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* "The inquiry into whether a statute operates retroactively demands a commonsense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment." *I.N.S. v. St. Cyr*, 533 U.S. 289, 321 (2001). "A statute has retroactive effect when it," for example, "'takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new

---

4 ("taken together, subsections (b) and (c) [of § 3613] indicate a restitution lien arises upon the entry of judgment and continues for twenty years from the entry of judgment or twenty years from the release from imprisonment of the person, whichever is later, until liability is satisfied, remitted, set aside, or upon the death of the person fined"). For practical purposes, however, this is a distinction without a difference; should the prior version of § 3613 apply, under either Arlitt's or the Court's interpretation of the statute, the limitations period would have expired before the Government filed its Petition.

duty, or attaches a new disability, in respect to transactions or considerations already past.'" *Id.* (quoting *Landgraf*, 511 U.S. at 379).

There does not appear to be an express legislative command concerning the applicability of amended § 3613 to lien foreclosure actions that were filed after the date of amendment but relate to restitution obligations incurred prior to the amendment's effective date. But another section of the MVRA concerning the imposition of mandatory restitution during certain sentencing proceedings explains when that amended section of the statute applies, and that explanation cuts against Arlitt here. *See* 18 U.S.C. § 3663A (historical and statutory notes) (providing, "[t]o the extent constitutionally permissible, this section is effective for sentencing proceedings in cases in which the defendant is convicted on or after enactment of Act April 24, 1996, *P.L. 104-132 . . .*").

In any event, the second part of the *Landgraf* test reflects that applying the current version of § 3613 here would not result in an impermissible retroactive effect. "Changes in procedural rules may often be applied in suits arising before their enactment without raising concerns about retroactivity." *Landgraf*, 511 U.S. at 275. This is due to "diminished reliance interests in matters of procedures" and because "rules of procedure regulate secondary rather than primary conduct." *Id.* Here, Arlitt recognizes that § 3613 is a procedural statute. *See* Dkt. No. 405 at 6. Although the Supreme Court has cautioned that "the mere fact" "a new rule is procedural does not mean that it applies to every pending case," *id.* at n. 29, the Fifth Circuit has held that applying a new statute of limitations for unexpired claims arising from conduct that occurred prior to the amendment does not have a retroactive effect under *Landgraf*. *See St. Louis v. Tex. Worker's Comp. Com'n*, 65 F.3d 43, 46 (5th Cir. 1995). The amended statute, in such a circumstance, "governs the secondary conduct of filing suit, not the primary conduct of the

defendants." *Id.* (holding the statute of limitations for claims filed pursuant to the Age Discrimination in Employment Act, as amended by Civil Rights Act of 1991, applied to a suit filed after the effective date of amendment for conduct that occurred prior to the amendment).[5]

"Nor does the statute of limitations alter either party's liability or impose new duties with respect to transactions already completed." *Id.* The Fifth Circuit has further explained, as follows:

> [T]he issue is not technically one of retroactivity, where a change in the law overturns a judicial adjudication of rights that has already become final. In this case, the statute of limitations is applied to conduct that occurred after the statute's enactment-the plaintiff's filing of the complaint-not to the allegedly [unlawful] acts of the defendant. The only issue is which law to apply to the plaintiff's acts.
>
> There is no inequity in applying [the amended statute] to [Plaintiff's] cause of action.

*Id.* Thus, in *Adepegba v. Hammons*, the Fifth Circuit reiterated that procedural changes, even where they work to the disadvantage of defendants in pending cases, do not necessarily produce a retroactive effect under *Landgraf*. 103 F.3d 383, 386 (5th Cir. 1996) (Prison Litigation Reform

---

[5] *See also United States v. Richards*, 472 Fed. App'x 523, 525 (9th Cir. Mar. 20, 2012) ("[T]he statute of limitations with respect to liability for restitution is procedural. Absent congressional intent to the contrary, the district court is required to apply the law in effect at the time of its decision."); *United States v. Blackwell*, 852 F.3d 1164, 1166 (9th Cir. 2017) ("While statutes are ordinarily given only prospective effect, when a statute is addressed to remedies or procedures and does not otherwise alter substantive rights, it will be applied to pending cases . . . After the MVRA was enacted, Blackwell remained liable for the same amount of fines and restitution as he was prior to the enactment. The MVRA merely increased the time period over which the government could collect those fines and restitution.") (quotations and citations omitted)); *Masserano v. Entzel*, No. CV 15-336-JFW(AJW), 2016 WL 7187441, at *3 (C.D. Cal. Sept. 9, 2016), *report and recommendation adopted*, 2016 WL 7187296 (C.D. Cal. Dec. 8, 2016) (rejecting petitioner's argument that *Richards* was wrongly decided because the Ninth Circuit allegedly failed to take into account Congressional intent that the MVRA was not to be applied retroactively and noting that "the Court applies the version of the law as it currently exists") (citing *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1235 (9th Cir. 1994) ("in both jurisdictional and procedural changes the Supreme Court has clarified that the district court should apply the law in effect at the time it renders its decision")).

Act ("PLRA") could be applied retroactively to appeals pending as of the effective date of the statute because although the PLRA attached consequences to past actions, the consequences are matters of procedure and further, applying the PLRA "does not impose new or additional liabilities, but instead requires collection of a fee that was always due"); *see also Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014) (involving amendment from a four to a ten year statute of limitations and concluding that applying a new limitations period to unexpired claims does not "'attach[ ] new legal consequences to events completed before its enactment'" *Id.* (quoting *Landgraf*, 511 U.S. at 270)).

Although applying the current version of § 3613 might work to Arlitt's disadvantage here, applying it would not create any additional liability. Instead, it would extend the Government's ability to collect on a restitution obligation that was "always due" and that was unexpired at the time of the amendment to § 3613. *See Adepegba*, 103 F.3d at 386. Nor would such application raise Ex Post Facto concerns in this case. *See United States v. Phillips*, 303 F.3d 548, 551 (5th Cir. 2002) (rejecting defendant's argument that applying the MVRA to criminal acts before the MVRA's effective date violates the Ex Post Facto Clause; "[t]he MVRA merely affects how appellant's punishment is collected; it does not increase appellant's punishment."); *see also U.S. v. McGuire*, 636 Fed App'x 445, 446-47 (10th Cir. Jan. 15, 2016) (applying the extended unexpired statute of limitations in the MVRA did not violate the Ex Post Facto clause).

For these reasons, the statute of limitations had not expired when the Government filed its Foreclosure Petition, and Arlitt's argument for dismissal fails.

        **2.**    **Separate Property.** Arlitt next opposes foreclosure on the grounds that, according to her argument, the subject property is her separate property. The property, she contends, came to her as a result of her divorce, and her divorce decree was entered on May 2,

1996—over a year before the entry of judgment against Cluck. This argument is unavailing because the May 2, 1996 divorce decree did not divide the marital estate, and so the property at issue did not go to Arlitt as her separate property in that 1996 decree. Instead, the property division occurred, at the earliest, nearly two years later. Moreover, Arlitt was not awarded the real property in Liberty County and the oil, gas, and mineral rights in McMullen County until June 6, 2003. *See* Ex. C to Pet. Pursuant to § 3613, a lien arose on "all [of Cluck's] property and rights to property" beginning "on the entry of judgment." 28 U.S.C. § 3613(c).[6]

In examining similar statutes that govern tax liens,[7] the Supreme Court has explained that Congress used broad language in this context so as "to reach every interest in property that a taxpayer might have." *United States v. Nat'l Bank of Commerce*, 472 U.S. 713, 720 (1985). Only property listed in § 6334 of the Internal Revenue Code is exempt from levy. *See Drye v. United States*, 528 U.S. 49, 56 (1999). Courts must "look initially to state law to determine what rights the [criminal defendant] has in the property the Government seeks to reach, then to federal law to determine whether the [defendant's] state-delineated rights qualify as 'property' or 'rights to property' within the compass of the federal tax lien legislation." *Id.*; *see also United States v. Elashi*, 789 F.3d 547, 548-49 (5th Cir. 2015) ("Although federal law creates the lien on Elashi's property, state law defines the property interests to which the lien attaches.").

---

[6] Arlitt does not argue that the language "entry of judgment" here means the date judgment became final after exhaustion of all appeals. And regardless, "[a] sentence that imposes an order of restitution is a final judgment" notwithstanding the fact that the sentence can be appealed or modified. 18 U.S.C. § 3664(o).

[7] *See United States v. Elashi*, 789 F.3d 547, 549 (5th Cir. 2015) ("[T]he MVRA . . . explains that federal criminal debts are to be treated in the same manner as federal tax liens.") (citing 18 U.S.C. § 3613(c)).

Texas is a community property state. *Elashi*, 789 F.3d at 549. "All property that the spouses possess during their marriage is presumed to be community property . . . and each spouse has an undivided, one-half interest in all community assets." *Id.* (citations omitted). "Community property is further classified as either solely managed community property or jointly managed community property." *Id.* Solely managed community property is defined as "the community property that the spouse would have owned if single, including (1) personal earnings; (2) revenue from separate property; (3) recoveries for personal injuries; and (4) the increase and mutations of, and the revenue from, all property subject to the spouse's sole management, control, and disposition." Tex. Fam. Code § 3.102(a)(1). All other property is considered jointly managed community property, "unless the spouses provide otherwise by power of attorney in writing or other agreement." *Id.* § 3.102(c).

Arlitt does not allege that the property the Government seeks in foreclosure was her separate property prior to the divorce; nor is there reason to believe that the presumption that it was jointly managed community property would not apply here, even when accepting as true in this Rule 12(b)(6) posture all well-pleaded facts and "viewing them in the light most favorable to the plaintiff." *New Orleans City v. Ambac Assur. Corp.*, 815 F.3d 196, 200 (5th Cir. 2016) (quotations omitted). Because the property division did not occur until after entry of judgment against Cluck, the real property, mineral rights, and personal property at issue are presumed community property in which Cluck had an undivided one-half interest at the time of the criminal judgment. *Elashi*, 789 F.3d at 549. As the Fifth Circuit has explained,

> [T]he United States' judgment liens, whether for federal taxes or federal criminal debt, attach to the following community property defined under Texas law: (1) all of the debtor's solely managed community property; (2) all of the couple's jointly managed community property, including the non-debtor spouse's undivided one-half interest in the property; and . . . (3) the debtor's one-half interest in his non-debtor spouse's solely managed community property, including her income.

13

*Id.* at 551. Subject to Arlitt's claimed personal property exemptions discussed below, a lien attached to Cluck's interest in this property, and even to Arlitt's undivided, one-half interest to the extent the property was either solely managed by Cluck or jointly managed at the time of judgment. *See id;* 18 U.S.C. § 3613(c).

"[T]he transfer of property [to Arlitt by and through the 1999 and 2003 Divorce Decrees] subsequent to the attachment of the lien does not affect the lien, for it is of the very nature and essence of a lien, that no matter into whose hands the property goes, it passes cum onere." *United States v. Bess*, 357 U.S. 51, 57 (1958) (quotations omitted); *see also United States v. De Cespedes*, 603 Fed. App'x 769, 772 (11th Cir. Feb. 25, 2015) ("And the transfer of De Cespedes's interest to Lazaro did not affect the existing restitution lien . . . .") (quotations omitted). This fact is consistent with the language in the Final and Revised Divorce Decrees, both of which provided that "this Decree of Divorce does not alter in any way any right or liability of either Kristine Arlitt or Elwood Cluck as determined in any other civil suit, criminal action . . . in which either Kristine Arlitt or Elwood Cluck has been a party from the date of the marriage through the date of th[e] Divorce of Decree is signed" and "dispositions of property and allocations of debt or liability are as between Kristine Arlitt and Elwood Cluck only and are not intended as resolutions of disputes with any other person, business entity, or governmental authority." Exs. B and C to Petition.

Arlitt's argument that dismissal is appropriate because the property on which the Government seeks to foreclose is separate property is without merit.

**3.** **Service.** Arlitt next contends that the Petition must be dismissed because the Government failed to properly serve her in accordance with Federal Rule of Civil Procedure 4. Although the Government disputes whether Rule 4, as opposed to Rule 5, applies here, *see*

Dkt. No. 407 at 6-7, the record reflects that the Government personally served Arlitt with a copy of the Petition and a summons on May 9, 2018, Dkt. No. 412, and Arlitt does not argue otherwise or offer any convincing argument that she suffered any undue prejudice. Accordingly, Arlitt's objection to lack of proper service is moot and unavailing.

       **4.**       **Alleged Violation of Arlitt's Constitutional Rights.** There is no merit to Arlitt's argument for dismissal based on her contention that the Government violated her Fifth, Sixth, Eighth, and Fourteenth Amendment rights. Her rights were violated, she contends, by the Government naming her as a defendant in its proposed order attached to the Government's Motion for Entry of Default.[8] She alleges similar violations stemming from the Government's attempts to secure separate property without a judgment as punishment. She further contends that the Government violated her Fourth Amendment rights by breaking the lock, entering, and searching her private storage unit in conjunction with the *Parker* case. These arguments fail because Arlitt never explains how these allegations, even if ultimately substantiated, would support dismissal of the Government's Petition.

       **5.**       **Exemptions from Foreclosure.** Arlitt finally argues that the personal property on which the Government seeks to foreclose—the credenza, leather chair, safe, and desk located in Arlitt's storage unit—is exempt from foreclosure pursuant to 26 U.S.C. § 6334(a)(2) & (3). Subsections 6334(a)(2) and (3) of the Internal Revenue Code exempt the following property from levy:

> **(2) Fuel, provisions, furniture, and personal effects.**--So much of the fuel, provisions, furniture, and personal effects in the taxpayer's household, and of the arms for personal use, livestock, and poultry of the taxpayer, as does not exceed $6,250 in value;

---

[8] According to the Government, the naming of Arlitt as a defendant was simply an unfortunate clerical error. Dkt. No. 407 at 7.

**(3) Books and tools of a trade, business, or profession.**--So many of the books and tools necessary for the trade, business, or profession of the taxpayer as do not exceed in the aggregate $3,125 in value.

According to Arlitt, the items of personal property are either "tools of a trade, business or profession" (Arlitt is a licensed attorney) or furniture or personal effects. Although Arlitt admits that none of this property has been appraised, she "posit[s] that the total value of the items are well under $3,125 and/or $6,250.00." Dkt. No. 405 at 13.

This argument is also unavailing as a basis to dismiss the Petition. Whether the personal property here is exempt from foreclosure necessarily involves fact issues that must be fleshed out at a later stage in the proceedings, after considering evidence. Moreover, it is Arlitt's burden—not the Government's—to prove an exemption applies. *See Melton v. Teachers Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 560 (5th Cir. 1997) ("[W]e hold that once the IRS has determined that a taxpayer . . . is not entitled to an exemption under § 6334(a)(9), that the taxpayer bears the burden of proof to prove that his annuity income is exempt under § 6334(a)(9)."). Because Arlitt has failed to establish as a matter of law that the property is exempt from foreclosure, and because it appears that such a finding would be improper at this stage in the proceedings, Arlitt's argument for dismissal on these grounds fails.

**6.** **Sufficiency of the Government's Petition.** Finally, the undersigned notes that while Arlitt moves for dismissal of the Government's Petition under Rule 12(b)(6), neither party has provided the Court with the *elements* necessary to the Government's action to foreclose on a restitution lien. To survive a motion to dismiss, a petition to foreclose on a restitution lien must allege: (1) the date the Government assessed the [lien]; (2) that the Government gave notice of the assessment, demanded payment, and filed notice of the lien with the proper authority; and (3) that the Government seeks foreclosure of its federal [restitution] lien. *United States v. Toll*, No. 16-CV-62214, 2016 WL 7048321, at *3 (S.D. Fla. Dec. 5, 2016) (citing *United States v.*

*Blakeman*, 997 F.2d 1084, 1089 (5th Cir. 1992), *opinion withdrawn in part on reh'g sub nom.*

*United States v. Blakeman ex rel. Blakeman* (5th Cir. Jul. 28, 1993)) (discussing the elements the

Government must plead when seeking to foreclose on a federal tax lien); *see also Stallons*, 2018

WL 3640201, at *2. It appears that element two is missing from the Government's Petition.

Further, although the Government alleges that it perfected the lien by recording notice of it in the

Official records of Bexar County, Texas, it also alleges that the real property at issue here is

located in different counties—Liberty and McMullen County, Texas. The effect, if any, of this

discrepancy is unclear. Arlitt, however, has not moved for dismissal on this basis, and the

Government may be able to cure this pleading deficiency (if there is a deficiency)[9] with an

amendment. *See Constr. Cost Data, LLC v. The Gordian Grp., Inc.*, No. H–16–114, 2017 WL

2266993, at *3 (S.D. Tex. Apr. 24, 2017), *report and recommendation adopted*, 2017 WL

2271491 (S.D. Tex. May 22, 2017) (explaining that the burden is on the party moving for Rule

12(b)(6) dismissal to prove that "no legally cognizable claim for relief exists"); Local Rule CV-

7(d)(1) (requiring a party to cite legal authorities in support of a motion). Dismissal on this basis

is therefore not warranted.

 *The Government's Motion to Dismiss Arlitt's Counterclaim*. As discussed above, Arlitt

has filed a counterclaim against the Government, seeking to recover "any amounts of

monies/property collected by the government that she has an ownership interest therein by law."

Dkt. No. 405 at 21. In support, Arlitt argues that the Government "fails to admit or describe the

source of the monies it has collected" and "[i]t  may well be that the monies the government has

collected were property owned in community by Arlitt and Elwood Cluck prior to divorce." *Id.*

---

[9] *Cf. United States v. Bueno*, No. MO-10-CR-167-RJ-DC, 2013 WL 12228162, at *5 (W.D. Tex. Jun. 11, 2013), *report and recommendation adopted*, 2013 WL 12228159 (W.D. Tex. Sept. 20, 2013) (discussing when the Government must file a notice of lien in the county records in order to establish the restitution order under the MVRA as a priority interest).

Thus, according to Arlitt, "[u]nder the theory of the government in its Petition to Foreclose Lien against Arlitt, then one-half (1/2) of any property already confiscated by the government that was previously owned in community by Arlitt and Elwood Cluck is due and owing back to Arlitt." *Id.* Arlitt further posits that "the Government may have confiscated property from Elwood Cluck that was exempt and of which one-half (1/2) may be due and owing back to Arlitt." *Id.*

The Government moves to dismiss Arlitt's counterclaim under Rule 12(b)(6) on two grounds. First, the Government argues that it collected the $9,782.22 in restitution from Cluck's social security benefits through the Treasury Offset Program—as allegedly evidenced from public filings—and that these benefits are neither exempt from foreclosure nor would Arlitt have a community interest in them. Second, the Government invokes sovereign immunity as a bar to Arlitt's counterclaim. Dkt. No. 408. Arlitt has not filed a response to the Government's motion.

The undersigned will address the Government's sovereign immunity argument first, because it concerns the Court's subject matter jurisdiction and regardless of the fact that it is raised via Rule 12(b)(6) rather than 12(b)(1). *See Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) ("When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits."). Because the Government has mounted a facial attack on jurisdiction, the Court simply considers "the sufficiency of the allegations in the complaint because they are presumed to be true." *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). If those jurisdictional allegations are sufficient, Arlitt's counterclaim will stand. *See id.* "The burden of proof for a Rule 12(b)(1) motion to dismiss [, however,] is on the party asserting jurisdiction." *Ramming*, 281 F.3d at 161; *see also Wesley v. United States*, No. 3:15CV598-TSL-RHW, 2017 WL 831252, at *2 (S.D. Miss. Feb. 13, 2017), *report and recommendation adopted*, 2017 WL

831346 (S.D. Miss. Feb. 28, 2017) (noting that "[o]n Defendants' motion to dismiss under Rule 12(b)(1), it was [Plaintiff's] burden to prove "an unequivocal waiver of sovereign immunity and the existence of subject matter jurisdiction") (quotations omitted).

As a sovereign, the United States is immune from a suit seeking money damages except to the extent it has consented to be sued. *See United States v. Sherwood*, 312 U.S. 584, 586 (1941). Here, Arlitt asserts that the Court has jurisdiction over her counterclaim pursuant to 18 U.S.C. § 3613 and § 3231. *See* Dkt. No. 405 at 20. But § 3613 provides the Government with authority to enforce the restitution judgment, it does not authorize Arlitt's counterclaim to go forward or waive sovereign immunity. *See Stone v. Dep't of Treasury*, 859 F. Supp. 2d 53, 57 (D.D.C. 2012) ("The MVRA . . . . does not provide a waiver of sovereign immunity."). Arlitt has failed to provide any authority for her assertion that § 3231 somehow authorizes her to recover money damages in these circumstances, *see* 18 U.S.C. § 3231 ("The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States."), and she makes no other meaningful argument in support of her effort to sidestep sovereign immunity. Accordingly, Arlitt has failed to meet her burden with respect to sovereign immunity.

Further, even assuming jurisdiction over the counterclaim, Arlitt fails to allege sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. For these reasons, the Government's Motion to Dismiss Arlitt's Counterclaims, Dkt. No. 408, should be granted.

*Government's Motion to Strike Arlitt's Original Answer*. Finally, the undersigned turns to the Government's Motion to Strike Arlitt's Original Answer to its Petition to Foreclose and Reaffirmation of Previously Filed Affirmative Defenses and Counterclaims. Dkt. No. 416. By its

motion, the Government invokes Federal Rule of Civil Procedure 12(f) to strike allegations in paragraph 14 of Arlitt's Answer. The allegations involve the Government's allegedly unlawful inspection of her storage unit in the *Parker* case, which inspection the Answer labels as "immaterial," "impertinent," and "scurrilous." The Government's motion should be denied.

Federal Rule of Civil Procedure 12(f) permits a court to "strike[] from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" on motion by a party within 21 days after being served with the pleading. But "[s]triking a pleading is a drastic remedy to be used only when the purposes of justice so require." *Abramson v. Fl. Gas Transmission Co*., 908 F. Supp. 1383, 1386 (E.D. La. 1995). Indeed, many district courts have determined that "motions to strike pleadings generally should not be granted absent a showing of prejudice to the moving party." *Conn v. United States*, 823 F. Supp. 2d 441, 446 (S.D. Miss. 2011); *see also Fultz v. Plantation Bay, LLC*, No. 16-1132, 2016 WL 4508356, at *1 (E.D. La. Aug. 29, 2016). A district court has "considerable discretion" in deciding whether to grant or deny a motion to strike. *Fultz*, 2016 WL 4508356, at *1.

Here, Arlitt's affirmative defense regarding improper service can be resolved on the merits as discussed above. Accordingly, there is no reasonable basis to strike it from her Answer. Moreover, it is unclear what prejudice, if any, the Government will suffer by allowing these allegations to remain in Arlitt's pleadings. Indeed, the Government even argues that Arlitt is free to assert the same allegations in a different case. For these reasons, the undersigned recommends the Government's Motion to Strike, Dkt. No. 416 be denied.

### III.    Conclusion

For the reasons discussed above, the undersigned recommends that the District Court:

1) **DENY** Arlitt's Motion to Dismiss, Dkt. No. 405;

2) **GRANT** the Government's Motion to Dismiss Arlitt's Counterclaim, Dkt. No. 408; and

3) **DENY** the Government's Motion to Strike Arlitt's Original Answer, Dkt. No. 416.

In light of the above recommendation, **IT IS ORDERED THAT** the parties shall confer and submit proposed scheduling recommendations to govern the remainder of this action.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**IT IS SO ORDERED**.

SIGNED this 18th day of September, 2018.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE